*In re* DISSOLUTION OF COMMUNITY CO-OPERATIVE INDUSTRIES, INC.

PETITION OF WOLVERINE CO-OPERATIVE EXCHANGE.

1. MONEY LENT.
    A borrower may not dispute the authority of the creditor to make the loan.

2. MONEY RECEIVED—PUBLIC MONEYS.
    Public moneys illegally obtained may be recovered.

3. PAUPERS—EMERGENCY WELFARE RELIEF ADMINISTRATORS—DISCRETION.
    Both the Federal emergency relief act and the State emergency welfare relief act provide for relief of unemployment and for rehabilitation of families as well as relief of destitution and since neither evidence an intent to confine the aid strictly to alms but fail to prescribe a specific method of help, authority and discretion is conferred upon the administrator to meet the

necessities by measures appropriate to them (15 USCA, §§ 721–728; Act No. 201, Pub. Acts 1933).

4. SAME—GIFTS—LOANS TO CO-OPERATIVE AND SELF-HELP ASSOCIATIONS.

Under Federal emergency relief act authorizing Federal administrator to aid in assisting co-operative and self-help associations for the barter of goods and services and State emergency welfare relief act providing machinery for distribution of State, Federal and other funds and empowering State commission to take action to rehabilitate worthy families, since the relief agencies are not restricted to advances by way of gift, loans to a domestic corporation, organized as a "co-operative and self-help association for the barter of goods and services," evidenced by promissory notes, are *held*, proper (15 USCA, §§ 721–728; Act No. 201, Pub. Acts 1933).

5. SAME—TRANSFER OF NOTES—GIFTS.

Transfer by State emergency welfare relief commission of notes, given it by one co-operative association for loans made to it, to another co-operative association by way of gift *held*, valid (15 USCA, §§ 721–728; Act No. 201, Pub. Acts 1933).

6. BILLS AND NOTES—RECEIVERS—CO-OPERATIVES.

Notes given by a co-operative and self-help association to State emergency welfare relief commission in return for loans made and subsequently transferred by commission to plaintiff co-operative organization by way of gift *held*, proper claims by plaintiff to be allowed in receivership of maker (15 USCA, §§ 721–728; Act No. 201, Pub. Acts 1933).

Appeal from Ingham; Carr (Leland W.), J. Submitted April 26, 1937. (Docket No. 106, Calendar No. 39,474.) Decided May 21, 1937.

In the matter of the dissolution of the Community Co-operative Industries, Inc. Petition by Wolverine Co-operative Exchange for leave to intervene and for declaration of rights as to certain promissory notes. From decree invalidating such notes, petitioner appeals. Reversed.

*Cummins & Cummins,* for petitioner.

*Seymour H. Person,* for receiver of Community Co-operative Industries, Inc.

Fead, C. J.   The Federal emergency relief act of 1933 (48 Stat. 55, Ch. 30 [15 USCA, §§ 721–728]), provided for the appointment of a Federal emergency relief administrator, and—

"Sec. 4 (a) Out of the funds of the reconstruction finance corporation made available by this act, the administrator is authorized to make grants to the several States to aid in meeting the costs of furnishing relief and work relief and in relieving the hardship and suffering caused by unemployment in the form of money, service, materials and/or commodities to provide the necessities of life to persons in need as a result of the present emergency, and/or to their dependents, for the resident, transient or homeless.   *   *   *

"(c)   *   *   *   provided, that the administrator may certify out of the funds made available by this subsection additional grants to States applying therefor to aid needy persons who have no legal settlement in any one State or community, and to aid in assisting co-operative and self-help associations for the barter of goods and services."

By Act No. 201, Pub. Acts 1933, the State emergency welfare relief commission of this State was created, with "general supervisory control over the distribution of moneys appropriated by the State, or received from the government of the United States, or from any other source, which shall be used for the relief of destitution or unemployment within the State of Michigan or any political subdivision thereof." (Section 3.)   The State commission was also empowered to take action, subject to the approval of the governor, to "rehabilitate worthy families." (Section 5.)

The Federal emergency relief commission adopted rules and regulations under which State adminis-

trators were authorized to make loans to self-help co-operatives.

The Community Co-operative Industries, Inc., (defendant), a Michigan corporation, now in process of dissolution under receivership, was a "co-operative and self-help association for the barter of goods and services" within the meaning of the Federal act. It was given some $70,000 of relief funds outright. In 1935 it made several applications to the State emergency welfare relief commission for loans, at various times and in different amounts, aggregating $14,000. The applications were approved and the money paid; and, while the record is not entirely clear as to time, it appears that after most or all of it had been furnished, defendant executed several promissory notes to the State emergency welfare relief commission as payee, with different dates, amounts and maturities.

The Wolverine Co-operative Exchange (plaintiff), is a co-operative organization, and, in May, 1936, the State emergency welfare relief commission, by resolution, transferred, assigned and granted to it the notes of defendant.

Plaintiff has filed a petition for leave to intervene in the receivership proceeding and asks a declaration of rights. It claims, as owner of the notes, to be entitled to participate in the distribution of assets of defendant.

In its decree the court declared that the notes do not constitute valid and subsisting obligations against defendant for the reason that the State emergency welfare relief commission of Michigan was not authorized to make loan of the funds in its hands and had no authority to make any such payment other than as outright grant.

Counsel for defendant recognize the force of the rules that a borrower may not dispute the authority of the creditor to make the loan, and that public moneys illegally obtained may be recovered. Their contention is purely one of statutory construction— that under the Federal act the State commission had the authority to give defendant the moneys but had no authority to loan funds to it.

The contention raises the interesting question whether, if the State commission had no authority to loan the funds, its action in so doing may be half legal and half illegal. Or whether, because the statute did not command the State commission to make the gift to defendant and there was no approval by the public administrators of a gift to it, their action in making the loan was not wholly void, both as to advancing the money and taking the notes, unless they had a right to make a loan; and, consequently, whether the advances are not recoverable as illegal receipt of public funds. It would seem that if defendant's contention as to authority to loan is sound, then, because no gift was approved by the authorities, the moneys are so recoverable. But we rest decision upon another ground—the construction of the statutes.

Undoubtedly congress expected and intended that most of the moneys appropriated by the act would be given to needy persons without obligation or hope of return. But it did not say so in express terms. Nor is it a fair inference that congress visualized all the public need to be met by the act as curable and alleviable only by the remedy of pauperization, even as to the class of persons who were not to be reached by such other acts as those providing for business or home loans, housing projects, or other measures with a trade or production basis. It is sure that congress did not intend that the administrators could with-

hold funds from a needy person unless he accepted them as a loan and promised to repay them. But unless compelled by specific language, it would be equally inadmissible to construe the act as carrying an intention of congress that a needy person, seeking to preserve his self-respect, should be denied relief merely because he should refuse it as a gift and insist upon taking it as a loan, with promise to repay, even though such persons might be few.

The answer is found in the fact that neither the Federal nor State act prescribed the method of relief except in general terms. The Federal act committed the method to administrators, particularly to the States, subject to ultimate Federal direction. It clearly contemplated something other than a dole. In providing for work relief, relief of hardship and suffering caused by unemployment, not only by money but also by services, materials and commodities, as well as "relief," it carried the thought of practical aid to foster self-respecting self-support. In providing for relief of unemployed and for rehabilitation of families as well as relief of destitution, the State statute bore the same theme. Neither evidenced an intent to confine the aid strictly to alms, but by failing to prescribe a specific method of help they conferred upon the administrator the authority and discretion to meet the necessities by measures appropriate to them.

As to co-operative and self-help associations, the case seems even more clear. The act recognized that the associations would engage in business—the barter of goods and services. Barter is trade. "Aid in assisting" a business for co-operative self-help, whether to found it or to continue it, need not necessarily be wholly by gift. Loans are natural and normal methods of such aid. The outgo and income, or some of it, of some of the associations were season-

able. It is reasonable to suppose that congress intended that such associations, engaging in business, would have business-like, as well as purely gratuitous, aid from the government, gifts when they were necessary, temporary loans to carry it during nonproductive seasons when they were sufficient, always with such control by and contract with the public as would work out the purpose of the act.

We hold that neither by express terms nor by reflection of the intention of congress or the legislature did the statutes imperatively require the advances to defendant to be by way of gift and prohibit them as loans.

The power of the State emergency welfare relief commission to transfer the notes to plaintiff is challenged. However, the objection is that the commission had no authority to make the loan to defendant in the first instance. The loans being valid, the record does not indicate a bar to their transfer. So far as the record shows, the plaintiff is an association which the commission had the right to aid in assisting and no reason is disclosed why the aid could not be by way of gift of property as well as gift of money.

Reversed, and the notes at bar are declared to be valid obligations of defendant, are proper claims to be allowed in the receivership, and plaintiff is the owner and creditor. No costs.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.